CHERRY and BELL *vs* BELCHER.

1. Whether Chancery will entertain jurisdiction of the claim of a distributee, where the County Court has made a distinct and final order of distribution, awarding to each distributee the amount of his distributive part.—*Quare.*

2. But the mere ascertainment, by the County Court, of the sum remaining in the hands of representatives, even if the settlement be final, will not divest Chancery of jurisdiction, when applied to by a distributee (especially a *feme* covert,) to compel payment of a portion to which entitled.

3. Where a bill in Chancery is filed by one, to compel the payment by an administrator, of a distributive share in the estate of his wife's brother, the wife must be joined, *where it appears that the complainant intermarried with his wife, after the intestate's decease.*

4. In a bill in Chancery, by a distributee, to compel the payment of a distributive share of an estate, *it seems,* that other distributees need not be made parties.

5. Where a bill in Chancery is filed by a distributee, to compel a payment by the representatives of an estate, of a distributive share, the fact, that the Orphans' Court has previously, by a settlement, (final or otherwise,) ascertained the amount to which the distributee is entitled, will not preclude the representative from showing mistakes in that settlement, of payments, subsequent to the settlement, and of which then ignorant; or any other matter which in equity and good conscience, may be relied on, in defence.

6. It is a general rule, in Chancery proceedings, that when a case is heard, on bill, answer and exhibits, without proof—the allegations in the answer, whether responsive or not, must be considered as true.

In error from a decree in Chancery to the Circuit Court of Tuskaloosa.

In this case, Matthew C. Belcher filed a bill on the Chancery side of Tuskaloosa Circuit Court, setting out the following facts:

Some time about the latter part of the year 1821, or the first of the year 1822, one James Bell, then a resident citizen of the County of Tuskaloosa, departed this life, intestate, leaving a considerable personal estate, amounting to the sum of three thousand dollars: and four sisters, heirs, (having never married,) to wit, Sally Cherry, wife of Samuel T. Cherry, late Sally Bell; Polly Hemphill, wife of Nathan Hemphill, late Polly Bell; Susan Robinson, wife of —— Robinson, lute Susan Bell; and Elizabeth Belcher, late Elizabeth Bell, the wife of the complainant; who insisted, that by virtue of his intermarriage with the said Elizabeth, he became entitled, as a distributee, to the one fourth part of the estate of the said Bell, after paying the debts, &c.

After the death of the said James Bell, Samuel Cherry and Elizabeth Bell, the mother of James Bell, made application to the Orphans' Court of Tuskaloosa County, and were duly appointed administrators of the estate of the said James Bell: proceeding then to enter upon the discharge of the duties of their said office, they continued to act as administrators, until about the year 1825; when a final settlement of their accounts, as the said administrators,

was had by them, before the said Orphans' Court—whereby the sum of nine hundred and twenty-six dollars and eighty-three cents, was then and there reported by the said Court, to be due and owing on the said settlement by the said administrators, to the said estate; and subject to distribution, in their hands. As one of the distributees, then, of that estate, the complainant, as he contended, was entitled to demand and receive of, and from the said administrators, the one-fourth part of the said nine hundred and twenty-six dollars and eighty-three cents, so due as aforesaid, on the settlement aforesaid. The complainant, therefore, prayed an account by the said administrators; and a decree in his favor, for the distributive share aforesaid.

The answer of Cherry and of Elizabeth Bell, administrators, set out—that the said Bell departed this life, as charged, without having been married: that the respondent, and Elizabeth, the mother, administered on the estate, and continued, as alleged, to manage and control the same. That, having been cited to appear before the Orphans' Court, and render an account of the administration aforesaid—the said parties did appear; and the said decree for the amount charged, was then and there rendered against them, in favor of the estate. That one item of the said account, returned by them, as aforesaid, consisted of certain insolvent notes—the principal of which was credited to them; but the principal and interest charged, whereby a loss had accrued, through inadvertance or mistake, to the said administrators, of a large sum of money. That, one other item, charged against the administrators, was a note, sent to ano-

ther State, for collection; but which had, likewise, become insolvent. The answer then having proceeded to specify certain amounts, with which the administrators had been ·charged, and which had proved worthless; as also, certain amounts, paid for the estate since the settlement—averred, that said settlement, so made as aforesaid, had never been considered, by the administrators, as final and conclusive: but, on the contrary, the said administrators had been informed, by the judge of the Orphans' Court, that they would be entitled to all credits and payments afterwards made by them, on account of the said estate. And, the respondents further averred, that payments had been made by the administrators, to the wife of the complainant, not included in the said settlement; and on account of her distributive share in said estate. The respondents demurred to the complainant's bill—*First*, because the other distributees were not joined; *Secondly*, because the complainant had a remedy at law.

At October term, 1831, the cause having been heard on bill, answer and exhibits, a decree was rendered—whereby it was ordered, that the complainant recover of the defendants, the sum of two hundred and thirty-one dollars and seventy cents, the amount of the distributive share aforesaid, and interest.

To reverse this decree, the defendants removed the cause here, and assigned, as error—

*First*—That the demurrer of the defendants to the complainant's bill, was not disposed of.

*Secondly*—That the Chancellor erred, in rendering a decree, without disposing of the demurrer.

*Thirdly*—That the demurrer should have been considered and sustained.

*Fourthly*—That the Chancellor erred, in not dismissing the complainants' bill.

*Fifthly*—That the Chancellor erred, in not requiring the wife of the complainant to be made a party.

*Sixthly*—That the Chancellor erred, in not requiring the other distributees of the decedant's estate, to be made parties.

*Seventh*—That the Chancellor erred in rendering a decree against the defendants below.

*Eighth*—That the Chancellor erred, in rendering a decree for a larger amount than was authorised by the bill, answer and exhibits.

TAYLOR, J.—The bill, in this case, was filed to recover the distributive share, to which the defendant in error is entitled, of the estate of the late James Bell, of which the plaintiffs in error are the administrators. A decree was rendered in the Circuit Court, in favor of the complainant, for two hundred and thirty-one dollars and seventy cents, with interest thereon, from the 16th April, 1825.

It is alleged, in the bill, that the decedant died unmarried, and without issue, leaving four sisters, of whom the wife of the complainant is one: that the defendants below, (the plaintiffs in error,) administered on his estate, and on the sixteenth of April, 1825, made a final settlement of their administration with the judge of the County Court; upon which settlement it was found, by said judge, that the administators were indebted to the estate, in the sum of

5 s & p.          18

nine hundred and twenty dollars and eighty-three cents—to the one-fourth of which he is entitled, as his wife's distributive share.

The answer alleges, that the settlement was not final, nor so intended to be; that the administration was not then closed : that the respondents are entitled to credits, which were not allowed in the settlement, by mistake, &c.   That the administrators had paid to the wife of the complainant, one hundred and eighteen dollars, before she intermarried with the complainant.

Several objections are taken to the proceedings of the Circuit Court.   It is contended—

1st. That Chancery has no jurisdiction.

2dly. The complainant's wife should have been joined with him, in suing.

3dly. The other distributees should have been parties.

4thly. The Court should have ordered an account, notwithstanding the settlement with the judge of the County Court, and admitted any credits to which the administrators were justly entitled.

5thly. The answer should have been taken as true, without proof, as the cause was finally heard, upon bill, answer, and exhibits.

The first objection, it is believed, can not be sustained.   Whatever might be the effect of a distinct and final order of distribution, made by the County Court, awarding to each distributee the amount of his distributive part, a mere ascertainment of the sum remaining in the hands of the representatives, even if the settlement were certainly a final one, can not divest Chancery of its jurisdiction, when applied

to by one of the distributees, to compel payment of the portion, to which he is entitled. And Chancery will the more clearly have jurisdiction, of the case, when the bill is filed, to compel the payment of the distributive share of a married woman, that her interest, if necessary, may be protected.

The second objection is certainly available. From the whole of the proceedings, it sufficiently appears, that the intermarriage of the complainant, with a sister of the decedant, took place after the decedant's death. The interest which she had in his estate, thereby vested in her, and was not vested in the complainant, by the marriage. Were he to die, before receiving the share of his wife, it would survive to her, and his representatives would have no interest in it, whatever.

Nor does the circumstance, that the settlement with the County Court, was made after the marriage, have any effect in altering his rights : it bears no analogy to the case of a note given to the wife, after marriage, for a debt, due by account to her, before.

The wife should certainly have been joined in the suit.

It is not intended, to express the opinion, that if the marriage had taken place before the death of James Bell, the complainant could have sued alone : this point will be left, to be considered when the question arises.

On the third point, my own opinion is, that the other distributees should have been made parties— either complainants or defendants—that the whole business of the administration might have been set-

tled in one suit, to prevent a multiplicity of suits ; but the majority of the Court is against me.

As to the fourth objection, it does not appear that it was intended, that the settlement should close the business of the administration : but, if it was, we do not think, when the complainant comes into the Court of Chancery, to ask a decree for his distributive share, that the defendants would be precluded, by that settlement, from showing either a mistake, or that they were compelled to make subsequent payments, of which they were ignorant, at the time of the settlement; or any other matter, which, in equity and good conscience, should be admitted as a defence.

But the settlement relied upon, in this case, seems to contemplate something further to be done. It does not purport to be final, but declares, that nine hundred and twenty-six dollars and eighty-three cents, were then in the hands of the administrators, subject to distribution. We, therefore, think, the administrators should be heard, in any defence, which they may have, going, in equity and good conscience, to reduce the amount stated against them : such as a mistake in the settlement, subsequent liabilities, payments to the complainant after, or to his wife, before their marriage, &c.

As the cause must be remanded, to give the complainant an opportunity to amend, by making his wife a party; and the administrators, as well as the complainants, will then have an opportunity to sustain their several allegations, by proof—we deem it unnecessary to determine, whether the averments in the answers, should have been received as true,

upon the final hearing under the circumstances, or not.

We are perfectly satisfied with the decisions heretofore made; by which it has been determined, that when a case is heard, upon bill, answer and exhibits, without proof, all the allegations of the answer, whether responsive or not, are to be considered as true.

The decree must be reversed, and the cause remanded, that the complainant may have leave to amend his bill, so as to make his wife a party.