## JULIAN, ET AL. v. REYNOLDS, ET AL.

1. An administrator with an interest may purchase at a sale made of the intestate's estate, and if he uses the assets of the estate in making such purchase, the distributees may elect to consider the appropriation a conversion, or may treat the administrator as a trustee; this being the law, he cannot make *a gift* of the property so as to defeat the trust.
2. An answer in Chancery, when offered in evidence, is regarded as a declaration or admission of the party making it, and when the confession of the respondent would, with respect to others, be *res inter alios*, it cannot be received.
3. The declarations of a donor made subsequent to the execution of a deed of gift, are not admissible to defeat the gift.
4. Although administration may be granted in another State upon the estate of one who there dies intestate, if slaves belonging to the estate are brought to this State by the administrator, a Court of Chancery may here entertain a bill by a distributee to enforce a distribution.
5. To a bill for distribution against an administrator, appointed abroad, who brings a portion of the assets into this State, all the distributees should be made parties; but a personal representative of a husband of one of the distributees, who never reduced his wife's share into possession, need not be joined.

Writ of Error to the Court of Chancery sitting in Lowndes county.

THE complainants, Benjamin Reynolds and Sally his wife,

Julian, et al. v. Reynolds, et al.

Wiley Turner and Frances his wife, Thomas W. Turner and Harriett his wife, alledge, that in right of their respective wives, they are distributees and heirs of James Mosely, deceased. That the decedent died in the State of South Carolina, and that there administration was duly granted of his estate to his widow, Mary, and his son, John Mosely, who sold the real and personal property belonging to the intestate. At the sale thus made, the administratrix purchased the slaves with the effects of the estate, and removed with them to Alabama, where she now resides— the administrator still remaining in South Carolina. It is further stated, that " some of the slaves have had increase," some have been exchanged for other slaves, and others have been purchased with money belonging to the estate. That the administratrix has purchased a tract of land and other property with money of the estate, and has conveyed by deed of gift to her daughters, Eliza, (now Mrs. Julian,) and Martha, all the slaves and personal property, which she acquired by purchase, exchange, &c.

The bill prays an account of the intestate's estate, and that distribution be made of the slaves and other property now in the possession of the administratrix, and that the deed of gift be cancelled, &c.

Mrs. Mosely admits, by her answer, the material allegations of the bill, that she purchased the slaves for the heirs of the intestate, with money arising from the estate, and that the money accruing from the sale of the lands has been applied to the payment of the intestate's debts.

Geo. G. Julian, the husband of Eliza, also answers, says that he does not know whether the slaves were purchased with the effects of the estate of the intestate or not, but he claims the slaves in right of his wife, as Martha Mosely, the other donee, has since died. He objects to the relief sought, on the ground that the complainants should prosecute their remedy on the administration bond in South Carolina, before they can proceed against the property in question ; Further, that the answer of the administratrix cannot be used as evidence to defeat, or in any manner affect the deed of gift she has made.

The Chancellor ordered and adjudged that the deed of gift be cancelled and set aside, that the Register take an account

86

of the estate of the intestate, brought to this State by the administratrix, including the slaves purchased by her at the sale in S. Carolina, together with their increase ; also, those purchased by her since that time, with the assets of the estate, or acquired by exchange ; besides the land and other property purchased with the money to which the distributees were entitled.

The Register was directed further to take an account of how much each of the heirs and distributees may have received towards their portion of the estate ; who are the heirs and distributees, and the *quantum* of interest to which they are respectively entitled, under the law of descents and distribution, &c.

T. WILLIAMS, for the plaintiff in error, made the following points :   1. Mrs Mosely was an administratrix with an interest, and might purchase at a sale of her intestate's estate.   [2 Stew. Rep. 47 ; 4 Porter's Rep. 283 ; 6 Ala. Rep. 894.]   2. It is not alledged that the deed from Mrs. Mosely to Mrs. Julian, any Martha Mosely was fraudulent, and such a presumption cannot be indulged.   3. The answer of Mrs. Mosely is no evidence to defeat the gift she made her daughters.   4. If it was competent to call the administratrix and administrator to an account in the Courts of this State, the decree should have been for an account against them, and a partition of the estate which was chargeable.   5. All the distributees should have been made parties—two of them, viz : John Mosely and Jacob Tillman, are not before the Court.

J. M. BOLING, for the defendant in error.   The distributees may elect to compel Mrs. Mosely to account for the assets of the estate of the intestate with interest, or they can treat her as a trustee in respect to the slaves, &c. purchased with the money. [2 Johns. Ch. Rep. 30, 104 ; 4 Id. 305 ; 1 Monr. Rep. 44.] She cannot make herself the owner of the money, or by a gift or otherwise, change the destination to which it was designed when she purchased.   [1 Johns. Ch. Rep. 119 ; 1 Dess. Rep. 154.]

The bill shows that John Mosely had received his distributive share, and resided without the State; that Jacob Tillman is dead, and the objection for want of parties cannot be supported.   As

to all the defendants but Mrs. Mosely and Julian, the bill is taken for confessed; they answer, but Julian alone assigns errors. The answer of Mrs. Mosely is evidence against her co-defendant, who claims as her donee, [6 Cranch's Rep. 8, 19, 25; 9 Wheat. Rep. 831;] and his answer may be overbalanced by the positive testimony of a single witness, as the bill does not charge him with knowledge, and he merely states his opinion, belief, &c.

COLLIER, C. J.—1. There can be no question, according to the decisions in this State, that Mrs. Mosely might have purchased the property of her intestate's estate, at a sale thereof made according to law; and in the absence of any thing shown to the contrary, it will be presumed that the common law of South Carolina is accordant with our decisions. This is sufficiently established by the cases cited by the counsel for the plaintiff in error.

These are principles which we do not understand are controverted in the present case. Mrs. Mosely admits that she purchased the slaves with money belonging to the estate, for the benefit of the distributees; and hence it is contended that she acquired no title to them in her own right, but, that she held them in trust, and they must be distributed as the money would have been, had she retained it. That the distributees, had they so elected, might have considered the purchase as a conversion of the assets of the estate, and charged her with the money and interest, but they have thought proper to treat her as a trustee. This argument, we think, is well founded, both in reason and upon authority. Such being the law, Mrs. Mosely could not defeat the trust, by the gift she made to her daughters, and consequently it is not essential to the relief prayed, that the bill should alledge, that the deed sought to be set aside is tainted with fraud.

2. It is said to be a strict rule, that the answer of one defendant shall not be read in evidence against another; the reason being, that there is no issue between the parties, and there has been no opportunity for cross-examination. [Gresly's Eq. Ev. 24.] But this rule it is said, does not apply to cases where the other defendant claims through him, whose answer is offered in evidence; nor to cases where they have a joint interest, either as partners or

otherwise, in the transaction.   [Greenl. Ev. 210 ; 3 Phil. Ev. C. & H.'s notes, 931-2, and cases there cited.

An answer in Chancery, when offered in evidence, is regarded as a declaration, or admission of the party making it, and where the confession of the respondent would, with respect to others, be *res inter alios*, it cannot be received.   [1 Starkie's Ev. 288, 291; 2 Id. 36-7 ; Greenl. Ev. 210-11, and cases cited in the notes to each of these.]   None of the cases cited for the defendant in error allow greater latitude in admitting an answer than this.   Osborn v. The U. S. Bank, 9 Wheat. Rep. 831, recognizes the rule as we have laid it down, and holds, that where a defendant dies after having answered a bill, his answer is evidence against one who comes in as his representative.

The defendant, Julian, declares that he does not know, that Mrs. Mosely purchased the slaves which she gave to his wife and daughter Martha, with the money of her intestate's estate ; and the answer of Mrs. Mosely is offered to countervail the effect of that declaration, made under oath, in response to the bill.   It is perfectly clear, that a deed of gift cannot be defeated by the statements of the donor, made subsequent to its execution ; and the answer of a co-defendant cannot be received for that purpose, where his declarations would be incompetent.   There was then no evidence to show that the deed to Mrs. Julian and her sister, was inoperative, in consequence of the invalidity of the donor's title.

3. Although the intestate died in South Carolina, his estate was there administered on, and the slaves were there sold, and purchased by Mrs. Mosely, yet as they were brought by her to this State, a Court of Chancery may entertain a bill at the suit of a distributee, to coerce their distribution, &c.   Calhoun v. King, et al. 5 Ala. Rep. 523, is a conclusive authority upon this point.

4. To a bill like the present, all persons interested as heirs, or distributees of the intestate should be made parties, that their rights may be adjusted, and the estate finally disposed of.   Although John Mosely may have received his share, it is perhaps proper that he should be made a party, that the decree may conclude him.   If Jacob Tillman is dead, we can perceive no reason why his personal representative should be joined.; never having reduced his wife's share into possession, either actually

or constructively, no interest vested in him, that could be trans-
mitted on his death.

For the second point considered, the decree is reversed, and
the cause remanded.