# BOGAN *vs.* CAMP.

[BILL IN EQUITY FOR SPECIFIC EXECUTION OF CONTRACT.]

1. *Validity of assignment by administrator.*—A transfer by an administrator, in compromise of a pending suit, of a certain portion of the undivided assets of the estate, is violative of the statute prohibiting private sales by executors and administrators, and consequently void.

2. *Void contract not specifically enforced.*—Equity will not lend its aid to compel the specific execution of a void contract.

3. *Consideration and validity of assignment by distributees.*—A contract, by which two of the distributees of an estate assign and transfer to a third person, in compromise of a suit instituted by him against the estate, all their interest in the undivided assets of the estate, is supported by a sufficient consideration, and may be enforced.

4. *Parties to bill for specific performance.*—All the distributees of an estate are necessary parties to a bill, which seeks to enforce the specific execution of an assignment by one of them, to a third person, of all his interest in the undivided assets of the estate in the hands of the administrator.

5. *Allegations of bill for specific performance.*—When a bill seeks to enforce a contract, by which one of the distributees of an estate assigned to the plaintiff all his interest in the undivided assets of the estate, it must show that such distributee, at the time of the assignment, had an interest in the assets then remaining undivided, and furnish the data from which that interest may be ascertained.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon JAMES B. CLARK.

THIS bill was filed by Shadrach Bogan and James W. Bogan, against John Camp, individually, and as administrator of Joseph Camp, deceased, Robert B. Camp, and John W. Lapsley; seeking to enforce a contract, of which the following is a copy:

"The State of Alabama, ⎰　This indenture, wherein
　　Dallas County. 　⎱ John Camp, administrator of Joseph Camp, deceased, and also a brother of said deceased, and a distributee of his estate, and Robert B. Camp, a like brother and distributee, both of the State of Georgia, of the first part, and Shadrach Bogan, of this State, of the second part, witnesseth as follows: That there is a suit pending in the chancery court at Cahaba,

wherein said party of the second part is complainant, and said John Camp, as administrator as aforesaid, and others, are defendants, which said suit has been compromised and settled, on the following terms, to-wit: that said Bogan is to have, and shall receive, in full of all his demands set up in said suit, one third part of all said estate which has not been divided, after paying all expenses as hereinafter provided for; and, in consideration of that one third part, said Bogan agrees that said suit shall stand settled and dismissed, and to receipt and discharge in full the bond on which it is founded, to the said party of the second part, and to take and receive the same in full payment of all demands or matters set up in said chancery suit. The undivided portion of said estate consists, mainly, of notes, debts, and choses in action, in the possession of A. W. Spaight, of Cahaba, and of the said John Camp; and also, of certain slaves, in controversy in a suit in said chancery court, wherein Benjamin R. Gantt and others are complainants, and said John· Camp, as administrator as aforesaid, is defendant; one third part of all which is hereby assigned, transferred, and conveyed, as aforesaid, to Bogan, to be his own absolute property; subject, however, to pay one third part of the expenses as aforesaid. It is further agreed, that on a final adjustment and division of said effects, all just and lawful expenses now *impaired* (?) shall be deducted out· of said undivided part of said estate; and in said expenses are to be included the costs of said chancery suit, and all lawyer's fees on both sides now unpaid,—both Bogan's and Camp's. Now this indenture witnesseth the matters aforesaid; and the said John Camp, as administrator as aforesaid, on behalf of said estate, and for it, now compromises said chancery suit and claim on the terms aforesaid, and doth hereby bind the estate, and himself personally, to abide, stand by, and make good the terms aforesaid; and the said Robert doth, on his part, as distributee, sanction said compromise, and become a party thereto, and surety for the said John that the terms of said compromise shall be complied with, and doth hereby firmly bind himself to the same; and the said party of the second part doth accept

said terms, and the said obligation of said Camps, and the said arrangement, and release said estate, as aforesaid, from his claim in said suit. In witness whereof, all said parties hereto set their hands and seals, this Dec. 6, 1849.

Attest : WM. HUNTER.

(signed) JOHN CAMP.
R. B. CAMP.
S. BOGAN.

The bill alleged, that the said S. Bogan afterwards transferred and assigned one tenth of his interest under this contract to Mess. Lapsley & Hunter, of whom said John W. Lapsley is the surviving partner, and the residue to said James W. Bogan ; that the Camps, after making several payments in money under this contract, disregarding their said contract, have removed all the slaves belonging to said estate to Georgia ; and that said John Camp, as administrator, is about to make a final settlement and distribution of said estate before the probate court of Dallas. The prayer of the bill is, "that an account may be taken of the assets of said estate undivided at the time of the execution of said contract, and, after allowing the expenses according to said contract, that said administrator be required to deliver to complainant James W. the balance due him, after allowing one tenth thereof to said Lapsley, as surviving partner as aforesaid ; that said administrator be required to produce said negroes, so that they may be divided according to the terms of said contract, and that he be held to account with complainants for the hire of said slaves, and for all the effects of said estate undivided at the time of the execution of said contract, together with such interest as may be due thereon, so that complainant James W. may recover what is due him under said contract, and that said John and Robert Camp be required to pay the amount due complainant ;" and the prayer for other and further relief is added.

The chancellor held, that the contract sought to be enforced was illegal and void, as being in contravention of the statute which prohibits private sales by executors and administrators ; and in support of this position he cited the following cases : Dearman v. Dearman, 4 Ala.

521; Fambro v. Gantt, 12 Ala. 298; Wier v. Davis & Humphries, 4 Ala. 442; Elliott v. Branch Bank at Mobile, 20 Ala. 345; Ventress v. Smith, 10 Peters, 161. He therefore dismissed the bill, for want of equity; and his decree is now assigned as error.

BYRD & PARSONS, for the appellants.—1. The chancellor, it is insisted, misconceived the character of the contract on which the suit was founded. The statute respecting private sales by executors and administrators, was intended to guard against the two evils therein specified, neither of which, upon a fair construction, includes this contract. The contract does not contemplate a delivery of the property to the purchaser in specie, in discharge of his claim; nor does it specify any price for the transferred interest, to be paid in money. It has been treated as an interest which is to be distributed in money, and several payments in money have been made under it. The contract itself provides, "that on the final adjustment and division of said effects, all just and lawful expenses shall be paid; showing conclusively that the parties contemplated the final adjustment and division in money of what was left after the payment of expenses.

2. The administrator is estopped by his own act from questioning the validity of the contract.—Hopper v. Steele, 18 Ala. 828; Tompkies v. Reynolds, 17 Ala. 109; Kavanaugh v. Thompson, 16 Ala. 817.

PEGUES & DAWSON, contra.—1. The bill was properly dismissed, because the contract sought to be enforced is illegal and void.—Clay's Digest, 223, § 13; Weir v. Davis & Humphries, 4 Ala. 442; Dearman v. Dearman, 4 Ala. 521; Fambro v. Gantt, 12 Ala. 298; Elliott v. Branch Bank at Mobile, 20 Ala. 345; Ventress v. Smith, 10 Peters, 161.

2. If the contract is not void, it cannot be enforced until there has been a final settlement of the estate. Consequently, the bill was premature, and ought to have been dismissed.

WALKER, J.—We construe the instrument which is the foundation of this suit, from the import of its language, as follows: 1. There is an assignment to Bogan of one third of the undivided part of the estate, after paying certain expenses. 2. There is a stipulation that Bogan shall have and receive that third part. 3. John Camp individually, and as administrator, and Robert B. Camp, are the parties who make the assignment and stipulation. That Robert B. Camp is a party making the assignment, and binding himself primarily, and also as surety for John Camp, is proved by the recital, at the commencement of the instrument, that he, a brother of the deceased, and a distributee of the estate, is a party to it ; and by the assertion that he "doth, on his part, as distributee, sanction said compromise, and become a party thereto, and surety for the said John that the terms of said compromise shall be complied with, and doth hereby firmly bind himself to the same."

Upon this construction of the instrument, we must treat it as an assignment by John and Robert B. Camp, accompanied by a stipulation that Bogan shall receive the interest so assigned. It is within the jurisdiction of the chancery court to divide the property, and to distribute to Bogan the interest transferred to him, if the assignment is valid, and conveys any interest, and the proper allegations and parties are made in the bill. Smith v. Dunn, 27 Ala. 315.

We fully concur with the chancellor, that the assignment by the administrator, in his official capacity, is in palpable violation of the statute which prohibits private sales by executors or administrators.—Clay's Digest, 223, § 13 ; see, also, the authorities cited in the chancellor's opinion. The argument, that an administrator may transfer a certain interest in the net estate, after it has been converted into money, and all expenses have been paid, has no application; because the instrument mentions the property in general terms, and then transfers a certain part of it to Bogan, to be his own absolute property. If an administrator were to transfer the property of the estate in payment of an undisputed debt of an ascertained amount,

it would not be disputed that this was a private sale of the property for the amount of the debt.—Fambro v. Gantt, 12 Ala. 298. That the debt was one of doubted obligation, and its amount not ascertained, so that the precise value set upon the property could not be determined, cannot contribute to the validity of the transaction· It is true that, if the contract of sale had been consummated by a delivery of the property sold, the administrator who made the sale could not have recovered back the property. But the contract, so far as it purports to be an assignment by the administrator, and an agreement to set off the interest assigned, is void on its face; and this court will not aid the complainants in the enforcement of such a contract. The maxim applies, *In pari delicto, potior est conditio possidentis.*—Brantley v. West, 27 Ala. 542.

We proceed, next, to consider the effect of the instrument as an assignment by John Camp and Robert B. Camp. They were distributees of the estate, and had, therefore, an equitable interest in it which they might transfer. The release of a claim against the estate would tend to increase their respective shares, and would, therefore, be a consideration beneficial to them. Whether their interest as distributees, at the time of the assignment, was equal to one third of the estate then undivided, does not appear; and no data are afforded by the bill, from which it could be ascertained. Now we are of the opinion, that it was competent for John and Robert Camp to transfer their equitable interest as distributees; but all the distributees would be necessary parties to a bill to recover such an interest, unless there had been an ascertainment and allotment of the several shares. Chapman v. Hamilton, 19 Ala. 121; Hartley v. Bloodgood, 16 Ala. 233; Julian v. Reynolds, 8 Ala. 680, overruling Cherry v. Belcher, 5 Stew. & P. 133; Goodman v. Benham, 16 Ala. 625; Watts v. Gayle & Bower, 20 Ala. 824.

But we are persuaded that there is an objection to this bill still more fatal. It is impossible to ascertain, from the bill, to what measure of relief the complainants are

19

entitled. It cannot be said that they are entitled to one third of the property undivided, after paying expenses, because it cannot be known whether the interest of the two distributees amounts to that much. It cannot be said that they are entitled to the entire interest of the two distributees, because that interest may exceed the one third. Most important of all, it does not appear that the two distributees who made the assignment had any interest in the property then undivided. That would depend upon the number of distributees, and the amount previously received by them. Every thing in the bill may be true, and yet it may also be true that the assignors have no interest whatever in the property undivided. It does not follow, it will be perceived, that they are interested in the particular property because they are distributees of the estate.

The draughtsman of the bill manifestly did not regard the instrument as an assignment of the interest of the obligors as distributees in the undivided assets of the administration, and did not frame the bill with that view. It does not contain the allegations, and does not appear to have brought before the court parties, necessary to entitle the complainant to relief in that respect. Viewed in that aspect, therefore, it was properly dismissed.

The decree of the chancellor is affirmed.